1

**TIFFANY & BOSCO, P.A.**
Richard G. Himelrick, Arizona Bar #004738

2

J. James Christian, Arizona Bar #023614
Third Floor Camelback Esplanade II

3

2525 East Camelback Road
Phoenix, Arizona 85016-4237

4

Telephone: (602) 255-6000
Fax: (602) 255-0103

5

rgh@tblaw.com; jjc@tblaw.com

6

**SCOTT + SCOTT LLP**
Arthur Shingler III

7

Mary K. Blasy
Hal D. Cunningham

8

600 B Street, Suite 1500
San Diego, CA 92101

9

Telephone: (619) 233-4565
Fax: (619) 233-0508

10

Counsel for Plaintiff

11

[Additional counsel appear on signature page]

12

UNITED STATES DISTRICT COURT

13

DISTRICT OF ARIZONA

14

15

ROBERT P. BACA, derivatively on behalf of
Nominal Defendant INSIGHT ENTERPRISES,

16

INC.,

Case No. _____

17

            Plaintiff,

**Verified Shareholder
Derivative Complaint**

18

        vs.

19

TIMOTHY A. CROWN, ERIC J. CROWN,
RICHARD A. FENNESSY, GLYNIS A.

20

BRYAN, KAREN K. MCGINNIS, LARRY A.
GUNNING, ROBERTSON C. JONES,

**Jury Trial Demanded**

21

MICHAEL M. FISHER, BENNETT
DORRANCE, KATHLEEN S. PUSHOR,

22

DAVID J. ROBINO, ANTHONY A.
IBARGUEN AND STANLEY LAYBOURNE,

23

24

            Defendants,

25

        and

26

INSIGHT ENTERPRISES, INC., a Delaware
Corporation,

27

            Nominal Defendant.

28

Plaintiff, for his verified derivative complaint, by his undersigned attorneys, alleges upon personal knowledge as to himself, and upon information and belief as to all other matters, as follows:

## NATURE OF ACTION

1.      Plaintiff Robert P. Baca, by his undersigned attorneys, submits this Verified Shareholder Derivative Complaint.  This is a shareholders' derivative action brought in the name of and for the benefit of nominal defendant Insight Enterprises, Inc. ("Insight" or the "Company") against certain current and former executive officers and members of the Board of Directors of Insight (the "Individual Defendants").   The action arises from these Individual Defendants' breaches of fiduciary duties, waste of Insight's corporate assets, and abuse of their control of Insight in connection with their causing, approving, and/or acquiescing in Insight's issuance of false and misleading financial reports and financial statements filed with the Securities and Exchange Commission ("SEC").

2.      Beginning at least as early as April 2004, and continuing through February 9, 2009 (the "relevant period"), the Individual Defendants, in breach of their fiduciary duties, devised, approved and implemented a plan to: (a) misreport certain aged trade credits and overstate goodwill in publicly reported financial statements and other publicly disseminated financial reports (thereby materially overstating earnings); (b) file false and misleading financial statements not prepared in accordance with Generally Accepted Accounting Principles ("GAAP"), despite claiming otherwise; (c) file false and misleading certifications required by the Sarbanes-Oxley Act of 2002 attesting that Insight had adequate internal and financial controls, when it did not; (d) permit material weaknesses to exist in the Company's internal controls over financial reporting; and (e) unlawfully mislead investors as to the accuracy of Insight's financial statements in order to artificially inflate the price of Insight securities during the relevant period, enabling certain company insiders to sell over 2,287,309 million shares of their own personally-held Insight shares for over $49 million in proceeds.

3.      For almost its entire history as a public company, Insight has been reporting

2

false financial results.  On February 9, 2009, Insight was forced to admit the Company had issued materially false financial statements dating back to 1996.  In addition, the Company announced that it expected to make a material reduction to previously reported retained earnings dating back to December 31, 2004 (reportedly estimated to be in the tens of millions of dollars).

4.    As a result of the Individual Defendants' misconduct and false statements to the investing public, Insight's stock traded at inflated levels during the relevant period. However, after the above revelation entered into the market, nearly half of Insight's market capitalization evaporated in one day of trading.

5.    As the direct, proximate and foreseeable result of the Individual Defendants' fraudulent course of conduct, as set forth herein, NASDAQ is threatening to delist Insight's common stock due to failure to comply with NASDAQ Marketplace Rule 4310(c)(14) (which requires the timely filing of all reports and other documents filed or required to be filed with the SEC), and the Company has been forced to seek waivers from its revolving credit facility, its accounts receivable securitization financing facility and its inventory financing facility.  In addition, Insight recently disclosed that on March 19, 2009, the Company received an informal inquiry from the SEC requesting certain documents and information relating to its historical accounting treatment of aged trade credits.

6.    As the direct, proximate and foreseeable result of the Individual Defendants' fraudulent course of conduct, as set forth herein, since March 24, 2009, the Company has been named as a defendant in at least three securities fraud class actions filed in federal court alleging that Insight and its senior executives defrauded the purchasers of Insight's common stock dating back to April 2004.  Regardless of the ultimate outcome of these lawsuits, the Company is exposed to tens of millions of dollars in potential liability and costs associated with investigating and defending these lawsuits.

7.    As a direct and proximate result of the Individual Defendants' misconduct, Insight's once valuable information technology enterprise and reputation has been irreparably tarnished.  Furthermore, the Individual Defendants' malfeasance has caused, and

will continue to cause, Insight and its shareholders great harm, by having the Company absorb the financial losses as the common stock price falls from its artificially inflated prices during the relevant period to a price considerably lower because of investors' mistrust and skepticism of its financial disclosures.

8.     The Individual Defendants each owed and failed to carry out their fiduciary obligations to the Company and its shareholders.  This shareholder derivative action on behalf of Insight seeks to recover damages caused to the Company by its directors, CEO and senior officers who breached their fiduciary obligations to the Company.  Because of the gross dereliction of duty alleged and the fact that a majority of the members of Insight's Board of Directors are potentially liable for the misconduct alleged, demand on the Insight Board would be futile and has not been made.

## JURISDICTION

9.     This Court has jurisdiction pursuant to 28 U.S.C. §1332(a)(1) because plaintiff and defendants are citizens of different states and the matter in controversy exceeds $75,000, exclusive of interest and costs.

10.     Venue is proper in this District pursuant to 28 U.S.C. §1391(a) because a substantial portion of the transactions and wrongs complained of herein occurred in this District and one or more of the defendants either resides or maintains executive offices in this District.

## THE PARTIES

### *Plaintiff*

11.     Plaintiff Robert P. Baca is and was a shareholder of nominal defendant Insight at relevant times.  Plaintiff Baca is a resident and citizen of New Mexico.

### *Nominal Defendant*

12.     Nominal Defendant Insight Enterprises, Inc. provides brand-name information technology hardware, software, and services to small, medium, and large businesses; and public sector institutions in North America, Europe, the Middle East, Africa, and the Asia-Pacific.  Insight offers network and connectivity products, notebooks and PDAs, servers and

storage, desktops, printers, memory and processors, supplies and accessories, and monitors and video systems.  In addition, the Company offers design, implementation, and support of networking and communications solutions, including IP-based telephony, unified communications, wireless LAN, network security, network management and network infrastructure, and mobility solutions; and designs, implements, and manages server and storage environments.  Further, the Company assesses, implements, and manages software environments, including configuration and integration services; IT lifecycle services; and software asset management ("SAM") services, including SAM consultation, assessment of ISO standard attainment, and license reconciliations.  Insight, a Delaware corporation, was founded in 1988 and is headquartered in Tempe, Arizona.

*Individual Defendants*

13.  Defendant Timothy A. Crown ("Timothy Crown") has been a director since 1994 and Chairman of the Board since November 2004.  A co-founder of the Company, Timothy Crown stepped down from the position of President and Chief Executive Officer in November 2004, positions he had held since January 2000 and October 2003, respectively.  Timothy Crown is the brother of defendant Eric J. Crown.  During the relevant period, Insight paid defendant Timothy Crown approximately $1.3 million in salary, bonus, stock grants and other compensation.  During the relevant period, Timothy Crown sold 431,054 shares of Insight stock for proceeds of $8.7 million.  Timothy Crown is a citizen of Arizona.

14.  Defendant Eric J. Crown ("Eric Crown") is a co-founder of the Company, was Chairman of the Board of Insight through November 2004 and a director through November 2007.  Eric Crown has held various officer and director positions with Insight and its predecessor corporations since 1988, including Chief Executive Officer until 2001.  Eric Crown is the brother of defendant Timothy Crown.  During the relevant period, Insight paid defendant Eric Crown approximately $211,000 in salary, bonus, stock grants and other compensation.  During the relevant period, Eric Crown sold 515,600 shares of Insight stock for proceeds of $11.6 million.  Eric Crown is a citizen of Arizona.

15.  Defendant Richard A. Fennessy ("Fennessy") has been President and Chief

Executive Officer of the Company since November 2004 and a director since September 2005.  During the relevant period, Insight paid defendant Fennessy approximately $16.4 million in salary, bonus, stock grants and other compensation.  During the relevant period, Fennessy sold 25,444 shares of Insight stock for proceeds of $385,000.  Fennessy is a citizen of Arizona.

16.     Defendant Glynis A. Bryan ("Bryan") joined Insight in December 2007 as Chief Financial Officer.   During the relevant period, Insight paid defendant Bryan approximately $1 million in salary, bonus, stock grants and other compensation.  Bryan is a citizen of Arizona.

17.     Defendant Karen K. McGinnis ("McGinnis") joined Insight in March 2000 as Vice President of Finance.  McGinnis became Senior Vice President of Finance in April 2001 and was named Chief Accounting Officer in September 2006. McGinnis was Assistant Secretary of the Company beginning in January 2005.   McGinnis resigned from the Company effective March 31, 2009.  During the relevant period, Insight paid defendant McGinnis approximately $1 million in salary, bonus, stock grants and other compensation.  During the relevant period, McGinnis sold 63,584 shares of Insight stock for proceeds of $1.4 million.

18.     Defendant Larry A. Gunning ("Gunning") has been a director of Insight since 1995.   Gunning is, and at all relevant times was, a member of the Nominating and Governance Committee.  Gunning was the Chairman of Compensation Committee at all relevant times until April 2007.  During the relevant period, Insight paid defendant Gunning approximately $386,000 in salary, bonus, stock grants and other compensation.  During the relevant period, Gunning sold 2,533 shares of Insight stock for proceeds of $52,484.

19.     Defendant Robertson C. Jones ("Jones") has been a director of Insight since 1995.  Jones is, and at all relevant times was, a member of the Audit Committee and the Chair of the Nominating and Governance Committee.  During the relevant period, Insight paid defendant Jones approximately $410,000 in salary, bonus, stock grants and other compensation.  During the relevant period, Jones sold 5,593 shares of Insight stock for

proceeds of $117,453.

20.     Defendant Michael M. Fisher ("Fisher") has been a director of Insight since 2001 and is the Audit Committee's designated financial expert.  Fisher is, and at all relevant times was, Chairman of the Audit Committee.  During the relevant period, Insight paid defendant Fisher approximately $433,000 in salary, bonus, stock grants and other compensation.

21.     Defendant Bennett Dorrance ("Dorrance") has been a director of Insight since 2004.  Dorrance is, and at all relevant times was, a member of the Compensation and Nominating and Governance Committees.  In addition, Dorrance was a member of the Options Subcommittee from September 2006 through March 2007.  During the relevant period, Insight paid defendant Dorrance approximately $284,000 in salary, bonus, stock grants and other compensation.

22.     Defendant Kathleen S. Pushor ("Pushor") has been a director of Insight since September 2005.  Pushor is a member of the Audit and Compensation Committees.  During the relevant period, Insight paid defendant Pushor approximately $285,000 in salary, bonus, stock grants and other compensation.

23.     Defendant David J. Robino ("Robino") has been a director of Insight since May 2007.  Robino is the Chair of the Compensation Committee and a member of the Nominating and Governance Committee.  During the relevant period, Insight paid defendant Robino approximately $151,000 in salary, bonus, stock grants and other compensation.

24.     Defendant Anthony A. Ibarguen ("Ibarguen") has been a director of Insight since July 2008.  Ibarguen is a member of the Audit and Compensation Committees.  During the relevant period, Insight paid defendant Ibarguen approximately $40,000 in salary, bonus, stock grants and other compensation.

25.     Defendant Stanley Laybourne ("Laybourne") was a director of Insight from 1994 to May 2007.  During the relevant period, Laybourne also served as Chief Financial Officer, Treasurer and Secretary of the Company until his retirement in May 2007.  During the relevant period, Insight paid defendant Laybourne approximately $8.8 million in salary,

1  bonus, stock grants and other compensation.  During the relevant period, Laybourne sold

2  425,584 shares of Insight stock for proceeds of $8.5 million.

3      26.    The defendants identified in ¶¶13-14, 18-25 are referred to herein as "Director

4  Defendants."  The defendants identified in ¶¶13-15, 17-19, 25 are referred to herein as the

5  "Insider Selling Defendants."  Collectively, the Director Defendants, the Officer Defendants

6  and Insider Selling Defendants are referred to herein as the "Individual Defendants."

7      **THE INDIVIDUAL DEFENDANTS' FIDUCIARY DUTIES**

8      27.    By reason of their positions as officers, directors and/or fiduciaries of Insight

9  and because of their ability to control the business and corporate affairs of Insight, the

10  Individual Defendants owed Insight and its shareholders fiduciary obligations of care,

11  candor, compliance, fidelity, trust, loyalty and due care, and were and are required to use

12  their utmost ability to control and manage the Company in a fair, just, honest and equitable

13  manner, and were and are required to act in furtherance of the best interests of Insight and its

14  shareholders so as to benefit all shareholders equally and not in furtherance of their personal

15  interest or benefit.

16      28.    Each director and officer of the Company owes to Insight the fiduciary duty to

17  comply with the laws of the United States and to exercise due care and diligence in the

18  administration of the affairs of the Company and in the use and preservation of its property

19  and assets, and the highest obligations of good faith and fair dealing.

20      29.    In addition, as officers and/or directors of a publicly held company, the

21  Individual Defendants had a duty to promptly disseminate accurate and truthful information

22  with respect to the Company's finances and operations, and defendants also had an

23  obligation not to entrench themselves as officers and/or directors of the Company, to allow

24  open and honest board elections and to not advance their own personal, financial or

25  economic interests over and at the expense of the Company's public shareholders.

26      30.    The Individual Defendants, because of their positions of control and authority

27  as directors or officers of Insight, were able to and did, directly and indirectly, control the

28  wrongful acts complained of herein, as well as the contents of the various public statements

issued by the Company.  Because of their advisory, executive, managerial, and directorial positions with Insight, each of the Individual Defendants had access to all non-public information about the financial condition, operations and future business prospects of Insight, including, without limitation, the illegal and improper activities which the Individual Defendants caused Insight to engage in.

31.     To discharge their duties, the officers and directors of Insight were required to exercise reasonable and prudent supervision over the management, policies, practices and controls of the financial and operational affairs of the Company.  By virtue of such duties, the officers and directors of Insight were required, among other things, to:

a.     manage, conduct, supervise and direct the business and internal affairs of Insight in accordance with the laws and regulations of Arizona, Delaware, the United States, and pursuant to the charter and bylaws of Insight;

b.     neither violate nor knowingly permit any officer, director or employee of Insight to violate applicable laws, rules and regulations;

c.     remain informed as to the status of Insight's operations, and upon receipt of notice or information of imprudent or unsound practices, to make a reasonable inquiry in connection therewith, and to take steps to correct such conditions or practices and make such disclosures as are necessary to comply with applicable laws and regulations;

d.     establish and maintain systematic and accurate records and reports of the business and internal affairs of Insight and procedures for the reporting of the business and internal affairs to the Board of Directors and to periodically investigate, or cause independent investigation to be made of, said reports and records;

e.     maintain and implement an adequate and functioning system of internal legal, financial and management controls, such that Insight's operations would comply with all laws, Insight's financial statements and information filed with U.S. financial regulators and disseminated to the investing public and to Insight shareholders in Annual Reports would be accurate and the actions of its directors would be in accordance with all applicable laws; and

       f.    exercise reasonable control and supervision over the public statements to the securities markets, investors and public shareholders of Insight by the officers and employees of Insight and any other reports or other information required by law from Insight and to examine and evaluate any reports of examinations, audits or other financial information concerning the financial affairs of the Company and to make full and accurate disclosure of all material facts concerning, inter alia, each of the subjects and duties set forth above.

32.    During all times relevant hereto, each of the Individual Defendants occupied positions with Insight or was associated with the Company in such a manner as to make him or her privy to confidential and proprietary information concerning Insight, its operations, finances and financial condition.  Because of these positions and such access, each of the Individual Defendants knew that the true relevant facts specified herein had not been disclosed to and were concealed from Insight's shareholders and the public at large.  The Individual Defendants, as corporate fiduciaries entrusted with non-public information, are obligated to disclose material information regarding Insight and to take any and all actions necessary to ensure that the officers and directors of Insight do not abuse their privileged positions of trust, loyalty and fidelity in a manner which causes the Company to violate the law.

## SUBSTANTIVE ALLEGATIONS

33.    On February 9, 2009, the Company issued a press release entitled, "Insight Enterprises, Inc. Reports Preliminary (Unaudited) Fourth Quarter 2008 Results," which stated in part:

**Restatement of Previously Issued Financial Statements**

Following an internal review, the Company has determined that the Company's historical accounting treatment, since 1996, of certain aged trade credits created in the ordinary course of business was in error.  The error relates primarily to the release of certain aged trade credits from its balance sheet to its statement of earnings prior to the complete release of the underlying liabilities under applicable legal requirements.  Insight is working with its auditors and external advisors to quantify the related liabilities and to establish new policies going forward.  The review, covering trade credits since 1996, is ongoing, but the Company expects that it will restate financial

statements which are included in the Company's most recently filed Annual Report on Form 10-K, for the year ended December 31, 2007, and in the Quarterly Reports on Form 10-Q for the first three quarters of fiscal year 2008. The Company also expects that the restatement of its financial statements will include a material reduction of retained earnings as of December 31, 2004, related to the accumulation of such errors in prior periods. The cumulative restatement effect is expected to be $50 million to $70 million, before consideration of any tax effects. Given the high volume of individual transactions involved and complexity of researching each item, the Company expects that the final settlement of these liabilities may take multiple years and may eventually be settled for less than the estimated liability. Any difference between the restated amounts accrued by the Company and the final settlement with counterparties will be reflected in the periods in which any such resolution occurs.

34. On March 19, 2009, the Company received an informal inquiry from the Division of Enforcement of the SEC requesting certain documents and information relating to the Company's historical accounting treatment of aged trade credits.

35. A trade credit exists when one firm provides goods or services to a customer with an agreement to bill them later, or receive a shipment or service from a supplier under an agreement to pay them later.

36. Scenarios in which Insight would issue a trade credit include when a customer returned a product after paying for it or if a customer accidentally paid an invoice twice.

37. Beginning in March 2009, three putative class action lawsuits were filed in the U.S. District Court for the District of Arizona against Insight and certain of its current and former directors and officers on behalf of purchasers of Insight securities during the period April 22, 2004 to February 6, 2009 (the period specified in the first complaint is January 30, 2007 to February 6, 2009) related to the Company's restatement.

38. On May 12, 2009, during the Company's First Quarter 2009 Earnings Call, defendant Bryan provided more detail as to the Company's improper accounting of aged trade credits.

39. Defendant Bryan stated that an internal review had identified errors in the Company's accounting for trade credits in prior periods dating back to 1996.

40. Defendant Bryan stated the Company would take a restatement charge related to the trade credits in the amount of $61.2 million, or $37.7 million after taxes.

41.     Defendant Bryan reported that as of December 31, 2008, Insight has identified a material weakness in the Company's internal control over financial reporting related to the proper disposition, reconciliation, monitoring, and consequent accounting for aged trade credits.

42.     Insight had intentionally moved aged trade credits on sales made between the Company, its product suppliers and customers from its balance sheet to its income statement before it legally should have.  Specifically, after an 18-month period, Insight would move the credits from its balance sheet to income statement, thereby reducing the cost of goods sold and increasing the Company's gross profit in financial statements.

43.     Auditors purportedly discovered the error during a review of Insight's financial statements in 2008.

44.     Defendant Bryan has admitted, "there literally are hundreds of thousands of these transactions going back from 1996 to 2008."

45.     The restatement resulted in total charges of $61.2 million for the years impacted.  That includes $21.2 million in 2003, $4.8 million in 2004 and $9.1 million in 2005, $9.5 million for 2006, 10.2 million for 2007 and $6.3 million of the first three quarters of 2008.

46.     During the relevant period, the Individual Defendants engaged in a series of actions to effectively allow Insight to: (a) misreport certain aged trade credits and overstate goodwill in publicly reported financial statements and other publicly disseminated financial reports and thereby materially overstate earnings; (b) file false and misleading financial statements not prepared in accordance with GAAP, despite claiming otherwise; (c) file false and misleading certifications required by the Sarbanes-Oxley Act of 2002 attesting that Insight had adequate internal and financial controls, when it did not; (d) permit material weaknesses to exist in the Company's internal controls over financial reporting; and (e) unlawfully mislead investors as to the accuracy of Insight's financial statements in order to artificially inflate the price of Insight securities during the relevant period, enabling certain company insiders to sell over 2,287,309 million shares of their own personally-held Insight

shares for over $49 million in proceeds.

47.    Defendants' utter lack of oversight and inability to implement and maintain adequate internal operational and financial controls has caused, and will continue to cause, Insight and its shareholders great harm, by: (a) indelibly damaging its reputation and loss of goodwill in general; (b) exposing the Company and themselves to a substantial likelihood of criminal and civil liability, including suits for violations of the securities laws; and (c) having the Company absorb the financial losses as the common stock price falls from its artificially inflated prices during the relevant period to a price considerably lowered.

## DERIVATIVE ALLEGATIONS AND DEMAND FUTILITY

48.    Plaintiff brings this action derivatively in the right of and for the benefit of the Company to redress injuries suffered by the Company as a direct result of the Individual Defendants' wrongdoing.

49.    Plaintiff is, and at relevant times was, a holder of Insight common stock.

50.    Plaintiff did not made any demand on the Director Defendants to institute this action because such demand would be a futile and useless act for the following reasons:

a.    Demand is excused because the conduct alleged herein was so reckless on its face that it could not have been the product of sound business judgment.  The wrongdoing and harm alleged in this Complaint flows directly from the defendants' deliberate and conscious decision to commit deceptive and illegal acts and to misstate and withhold material information from the investment community, as alleged herein at ¶¶33-47.

b.    Although the Director Defendants were required pursuant to their fiduciary duties as Insight Board members and as members of specific committees of the Company's Board to monitor and ensure that the operations of the Company were based on sound business judgment, the Individual Defendants failed to exercise their duties, and rather, simply caused and/or permitted Insight to engage in the reckless and misleading conduct described above, exposing it to millions of dollars in potential fines, penalties, civil judgments and defense costs and reputational harm.

c.    The Insight Audit Committee consists of Individual Defendants Fisher

1    (Chairman), Ibarguen, Jones and Pushor.  Among other things, Insight's Audit Committee

2    Charter charges its members to assist the Board in fulfilling its oversight responsibilities with

3    respect to: (i) reviewing on a continuing basis the adequacy of Insight's system of internal

4    controls, and, to the extent required, meeting with Insight's management and the independent

5    auditors to review the adequacy of such controls and to review before release the disclosure

6    regarding such system of internal controls required under SEC rules to be contained in

7    Insight's periodic filings and the attestations or reports by the independent auditors relating

8    to such disclosure; (ii) overseeing Insight's internal audit function, with the director of the

9    internal audit function being a direct report to the chairperson of the Committee; (iii) the

10   independent auditors' qualifications and independence; and (iv) the performance of the

11   Company's internal audit function and independent auditors.  Despite this charter, the

12   Individual Defendants appointed to this committee during the relevant period failed to

13   perform proper due diligence and inform themselves about and oversee the Company's

14   affairs, exposing each of them to personal liability.

15           d.      The Director Defendants, including the Audit Committee members, also

16   caused and/or permitted Insight to issue materially misleading financial statements during

17   the relevant period.

18           e.      The Director Defendants, including the Audit Committee members, also

19   failed to adequately monitor the Company's financial controls during the relevant period.

20           f.      The Director Defendants, including the Audit Committee members,

21   failed to adequately monitor and enforce the Company's internal controls, which led the

22   Company to misreport certain aged trade credits and overstate goodwill in publicly-reported

23   financial statements and other publicly-disseminated financial reports (thereby materially

24   overstating earnings).

25           g.      The Insight Board's Compensation Committee consists of Defendants

26   Robino (Chairman), Ibarguen, Dorrance and Pushor.  Among other things, Insight's

27   Compensation Committee Charter charges its members to: (i) approve corporate goals and

28   objectives relevant to CEO compensation, evaluate the CEO's performance in light of those

goals and objectives, and determine and approve the CEO's compensation level based on this evaluation; (ii) determine the long-term incentive component of senior executive compensation; (iii) review the compensation of all other officers of the Corporation and make recommendations to the Board with respect thereto; and (iv) make recommendations to the Board with respect to incentive compensation plans and equity-based plans.  Rather than complying with their fiduciary duties and the mandate of the Compensation Committee's Charter, these Defendants caused Insight to incentivize excessive risk-taking, including outright illegal acts, and financial misreporting by its senior executives.  In light of having caused Insight to incentivize reckless risk-taking during the relevant period, each of the Compensation Committee members is exposed to additional personal liability.

h.     The Individual Defendants, including the Audit Committee and Compensation Committee members, participated in, acquiesced in, or approved the acts or omissions or recklessly disregarded the wrongs alleged herein, and did so in affirmative violation of their duties to the Company and its shareholders and have permitted the wrongs alleged or have remained inactive although they had knowledge or notice of those wrongs.

i.     Through gross negligence, mismanagement or reckless or intentional misconduct, exposed Insight to millions of dollars in potential fines, penalties and damages in connection with the SEC inquiry and pending securities class action lawsuits and irreparably diminished Insight's reputation and standing in the information technology community.

j.     Because of their participation in the mismanagement of the Company, gross dereliction of fiduciary duties, breaches of the duties of good faith and loyalty, waste of Insight's corporate assets, and abuse of their control of Insight, the Director Defendants are unable to comply with their fiduciary duties and prosecute this action.  Each of them is in a position of irreconcilable conflict of interest in terms of the prosecution of this action and defending themselves in the securities class action lawsuit.  The Director Defendants cannot defend their actions by any alleged "independent" business judgment since each of them acted in bad faith, grossly and recklessly abused their discretion, acted in breach of their

fiduciary duties to the Company and its stockholders and failed to act and abdicated their functions and duties as directors.

51.     A majority of the Director Defendants are not independent either because they are subject to liability for the misconduct alleged herein or, by virtue of their personal, professional and/or financial relationships with the Individual Defendants who are subject to liability for the misconduct alleged herein, are conflicted from complying with their fiduciary duties and prosecuting the claims alleged herein for the following, and other, reasons:

a.     Defendants Timothy Crown and Fennessy, in addition to being Insight Directors, are or were also executives of Solomon and are beholden to the other Director Defendants to maintain their livelihood and/or retirement benefits and for this reason are unable to comply with fiduciary duties to diligently investigate and prosecute the other members of the Insight Board.

b.     As hands-on managers of Insight, Defendants Timothy Crown and Fennessy directly oversaw and orchestrated the misconduct alleged in this action and thus would be biased in determining whether to bring suit against themselves.

c.     Based on the particularized facts above, to properly prosecute this lawsuit, the Individual Defendants would have to sue themselves, requiring them to expose themselves and their colleagues to potentially hundreds of millions of dollars in civil liability and sanctions.  This they will not do.

d.     Further, the Company's current and past officers and directors are protected against personal liability for their acts of mismanagement, waste, and breach of fiduciary duty alleged in this Complaint by directors' and officers' liability insurance, which they caused the Company to purchase with corporate funds for their protection – monies belonging to Insight stockholders.  However, due to certain language in directors' and officers' liability insurance policies, the directors' and officers' liability insurance policies covering the Individual Defendants in this case contain provisions which eliminate coverage for any action brought directly by Insight against these Individual Defendants, known as,

1   *inter alia*, the "insured versus insured exclusion."  As a result, if the Director Defendants

2   were to sue themselves or certain Company officers, there would be no directors' and

3   officers' insurance protection and thus, this is a further reason why they will not bring such a

4   suit.  On the other hand, if the suit is brought derivatively, as this action is brought, such

5   insurance coverage exists and will provide a basis for the Company to effect a recovery.

6                    **AIDING AND ABETTING AND CONCERTED ACTION**

7                    52.     In committing the wrongful acts alleged herein, each Individual Defendant has

8   pursued or joined in the pursuit of a common course of conduct and acted in concert with

9   one another in furtherance of their common plan.  In addition to the wrongful conduct herein

10  alleged as giving rise to primary liability, the Individual Defendants further aided and abetted

11  and/or assisted each other in breaching their respective duties.

12                   53.     The purpose and effect of the Individual Defendants' common course of

13  conduct was, among other things, to disguise their violations of law and breaches of

14  fiduciary duty, and to enhance executive and directorial positions and receive substantial

15  compensation and/or fees as a result thereof.

16                   54.     The Individual Defendants engaged in a conspiracy, common enterprise and/or

17  common course of conduct during the relevant period.  During this time, the Individual

18  Defendants caused the Company to conceal the true fact that Insight was, among other

19  things, misrepresenting the financial status of its business.

20                   55.     The Individual Defendants accomplished their common enterprise and/or

21  common course of conduct by causing the Company to purposefully, recklessly or

22  negligently violate state and federal law, the federal securities laws, and abdicate their duties

23  as directors.  Each Individual Defendant was a direct, necessary and substantial participant in

24  the common enterprise and/or common course of conduct complained of herein.

25                   56.     Each Individual Defendant aided and abetted and rendered substantial

26  assistance in the wrongs complained of herein.  In taking such actions, each Individual

27  Defendant acted with knowledge of the primary wrongdoing, substantially assisted the

28  accomplishment of that wrongdoing and was aware of his or her overall contribution to and

1  furtherance of the wrongdoing.

2       57.    At all times relevant hereto, each Individual Defendant was an agent of each of

3  the other Individual Defendant and was at all times acting within the course and scope of

4  such agency.

5  **COUNT I**

6  **Breach of Fiduciary Duty**

7       58.    Plaintiff incorporates by reference all prior paragraphs as if fully set forth

8  herein.

9       59.    The Individual Defendants each owed Insight and its shareholders the highest

10  fiduciary duties of loyalty, good faith and due care in managing and administering the

11  Company's affairs.

12       60.    The Individual Defendants were required to exercise reasonable and prudent

13  supervision over the management, practices, controls and financial affairs of Insight.  By

14  virtue of their duties of loyalty, good faith and due care:

15            a.    The Individual Defendants were required to exercise reasonable control

16  and supervision over the Company's officers, employees, agents, business, and operations;

17            b.    The Individual Defendants were required to make inquiries, use sound

18  business judgment, and remain informed about Insight's financial performance and

19  operations, and upon receiving notice or information of an imprudent, unsound or unlawful

20  decision, condition, or practice, the Individual Defendants were required to undertake a

21  reasonable investigation in connection therewith, were required to undertake steps to correct

22  the decision, condition, or practice, and to make public disclosure of such decisions,

23  condition, or practices in a timely and forthright manner; and

24            c.    The Individual Defendants were required to report to Insight's

25  shareholders the Company's excessive risk-taking, participation in fraudulent misstatements

26  of financial performance.

27       61.    Individual Defendants breached their fiduciary duties owed to Insight and its

28  shareholders, or aided and abetted in the breach of other defendants' fiduciary duties, by

willfully, recklessly and intentionally failing to perform their fiduciary duties. They caused the Company to waste valuable assets, unnecessarily expend corporate funds, and failed to properly oversee Insight's business, rendering them personally liable to the Company.

62.     Each of the Individual Defendants had actual or constructive knowledge that they had caused the Company to improperly misrepresent the financial performance of the Company and failed to correct those representations.

63.     All Individual Defendants, singly and in concert, engaged in the aforesaid conduct in intentional breach and/or reckless disregard of their fiduciary duties to the Company.

64.     The Individual Defendants conspired to abuse, and did abuse, the control vested in them by virtue of their high-level positions in the Company.

65.     As a direct and proximate result of Individual Defendants' breaches of their fiduciary duties of loyalty, good faith and due care, and aiding and abetting those breaches, as alleged herein, Insight has sustained and continues to sustain significant damages and a drastic diminution in value. As a result of the misconduct alleged herein, Individual Defendants are liable to the Company.

## COUNT II

### Gross Mismanagement

66.     Plaintiff incorporates by reference all prior paragraphs as if fully set forth herein.

67.     As detailed more fully herein, the Individual Defendants each owed a duty to Insight and its shareholders to prudently supervise, manage and control Insight's operations.

68.     The Individual Defendants, by their actions or inactions, either directly or through aiding and abetting, abandoned and abdicated their responsibilities and duties to prudently manage Insight's business and assets.

69.     As such, the Individual Defendants subjected Insight to the unreasonable risk of substantial losses by failing to exercise due care and by failing to use sound business judgment, including their failure to understand and monitor the Company's operational and

financial performance.  The Individual Defendants breached their duties of due care and diligence in managing and administering Insight's affairs and by failing to prevent a waste of Company assets.

70.     When discharging their duties, the Individual Defendants knew or recklessly disregarded the wrongful conduct described herein, and either approved management's activities or failed to supervise such activities in accordance with their duties.   The Individual Defendants grossly mismanaged or aided and abetted the gross mismanagement of Insight and its assets.

71.     As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations of loyalty, good faith, and due care, Insight has sustained and continues to sustain significant damages and a drastic diminution in value.   As a result of the misconduct alleged herein, all Individual Defendants are liable to the Company.

**COUNT III**

**Waste of Corporate Assets**

72.     Plaintiff incorporates by reference all prior paragraphs as if fully set forth herein.

73.     Because of the Individual Defendant's misconduct, Insight will incur costs and fees in the millions of dollars defending investigations and lawsuits and satisfying adverse judgments or settlements.

74.     As a result of the conduct alleged herein, the Individual Defendants have unreasonably and unnecessarily caused Insight to waste valuable corporate assets.

75.     As a direct and proximate result of the Individual Defendants' breaches of their fiduciary obligations of loyalty, good faith, and due care, Insight has sustained and continues to waste precious corporate assets and thus sustain damage.  As a result of the misconduct alleged herein, the Individual Defendants are liable to the Company.

**PRAYER FOR RELIEF**

THEREFORE, Plaintiff demands judgment in the Company's favor against the Individual Defendants as follows:

1         A.     Determining this action is a proper derivative action, Plaintiff is an

2    adequate representative on the Company's behalf, and demand is excused;

3         B.     Determining the Individual Defendants have breached or aided and

4    abetted the breach of their fiduciary duties to Insight;

5         C.     Declaring that the Individual Defendants are obligated to indemnify and

6    hold Insight harmless from any fines, penalties, judgment, settlement or award pursuant to

7    any SEC investigation or the class actions pending or to be filed against Insight or its

8    employees or agents;

9         D.     Awarding Insight the damages it sustained due to the violations alleged

10   herein from each of the Individual Defendants jointly and severally, together with interest

11   thereon;

12        E.     Awarding Insight exemplary damages in an amount necessary to punish

13   the Individual Defendants and to make an example of the Individual Defendants to the

14   community according to proof at trial;

15        F.     Awarding Insight restitution from each Individual Defendant;

16        G.     Awarding Insight equitable or injunctive relief as permitted by law;

17        H.     Awarding pre-judgment and post-judgment interest as allowed by law;

18        I.     Awarding Plaintiff the costs and disbursements of this derivative action,

19   including reasonable attorneys' fees, costs and expenses; and

20        J.     Granting such other and further relief as the Court deems just and

21   proper.

22   **JURY DEMAND**

23       Plaintiff demands a trial by jury on all issues.

24

25

26

27

28

1

DATED: June 15, 2009.

**TIFFANY & BOSCO, P.A.**

2

3

By:  _s/ Richard G. Himelrick_
Richard G. Himelrick (#004738)
J. James Christian (#023614)
Third Floor Camelback Esplanade II
2525 East Camelback Road
Phoenix, Arizona 85016-4237
Tel.:   (602) 255-6000
Fax:    (602) 255-0103

4

5

6

7

SCOTT + SCOTT LLP
ARTHUR SHINGLER III
MARY K. BLASY
HAL D. CUNNINGHAM
600 B Street, Suite 1500
San Diego, CA 92101
Tel.:   (619) 233-4565
Fax:    (619) 233-0508

8

9

10

11

DOYLE LOWTHER LLP
WILLIAM J. DOYLE II
JOHN A. LOWTHER
9466 Black Mountain Road, Suite 210
San Diego, CA 92126
Tel.:   (619) 573-1700
Fax:    (619) 573-1701

12

13

14

15

THE LAW OFFICE OF NICHOLAS
KOLUNCICH III, LLC
NICHOLAS KOLUNCICH
6501 Americas Parkway, Suite 620
Albuquerque, NM 87107
Tel.:   (505) 345-0605
Fax:    (505) 889-8240

16

17

18

Attorneys for Plaintiffs

19

20

21

22

23

24

25

26

27

28