**NOT FOR PUBLICATION**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert P. Baca, derivatively on behalf of Nominal Defendant Insight Enterprises, Inc., <br><br> Plaintiff, <br><br> vs. <br><br> Timothy A. Crown; Heidi Crown; Larry A. Gunning; Penelope Gunning; Robertson C. Jones; Katherine Jones; Michael M. Fisher; Joan Fisher; Bennett Dorrance; Jacquie Dorrance; Kathleen S. Pushor; John Pushor; David Robino; Lisa Robino; Anthony Ibargüen; Susan Ibargüen; Robert Woods; Ken Lamneck; Eric J. Crown; Richard A. Fennessy; Lee Ann Fennessy; Stanley Laybourne; Ellen Laybourne, <br><br> Defendants. <br><br> and <br><br> Insight Enterprises, Inc., a Delaware corporation, <br><br> Nominal Defendant. | No. CV 09-1283-PHX-SRB <br><br> **ORDER** |

This matter comes before the Court on Nominal Defendant Insight Enterprises's ("Insight") Motion to Dismiss Second Amended Verified Shareholder Derivative Complaint ("Insight's Mot.") (Doc. 75). At this time, the Court also resolves Defendants Timothy A.

Crown, Heidi Crown, Larry A. Gunning, Penelope Gunning, Robertson C. Jones, Katherine Jones, Michael M. Fisher, Joan Fisher, Bennett Dorrance, Jacquie Dorrance, Kathleen S. Pushor, John Pushor, David Robino, Lisa Robino, Anthony Ibargüen, Susan Ibargüen, Robert Woods, Ken Lamneck, Eric J. Crown, Richard A. Fennessy, Lee Ann Fennessy, Stanley Laybourne, and Ellen Laybourne's ("the Individual Defendants") Motion to Dismiss Second Amended Verified Shareholder Derivative Complaint ("Individual Defs.' Mot.") (Doc. 77).

**I.   BACKGROUND**

The facts of this case were set forth in this Court's Order of January 8, 2010 ("the January 2010 Order"), which is incorporated fully herein. (*See* Doc. 54.) The relevant details are summarized here. Plaintiff's Second Amended Complaint ("SAC") changes focus from the original Complaint: the gravamen of this case is now exclusively stock option backdating. (*See* SAC ¶¶ 1-9.) Plaintiff Robert Baca is a New Mexico resident who alleges that he "is the beneficial owner of 200 shares of Nominal Defendant Insight." (*Id.* ¶ 10.) Insight is a Delaware corporation with its principal place of business in Tempe, Arizona. (*Id.* ¶ 11.) The Individual Defendants are current and former directors and officers of Insight and their spouses. (*Id.* ¶¶ 12-24.) Ten of the Individual Defendants are the directors who comprised the Insight board as of February 8, 2010, when the SAC was filed: Timothy Crown; Larry Gunning; Robertson Jones; Michael Fisher; Bennett Dorrance; Kathleen Pushor; David Robino; Kenneth Lamneck;[1] Anthony Ibargüen; and Robert Woods (collectively, the "Director Defendants"). (*Id.* ¶¶ 12-21.) The remaining Individual Defendants are Insight co-founder Eric Crown, former Insight president and CEO Richard Fennessy, and former Insight CFO Stanley Laybourne. (*Id.* ¶¶ 22-24.) At various points, Defendants Gunning, Jones, Fisher, and Dorrance served on Insight's Compensation Committee, which was charged with reviewing stock option grants to the company's three top officers. (*Id.* ¶¶ 60, 62, 115.)

Insight's Certificate of Incorporation contains a provision limiting the liability of

---

[1] Mr. Lamneck joined the Insight board in January 2010, and he was not previously named as an Individual Defendant. (*Id.* ¶ 19.)

- 2 -

1 individual directors. (*See* Insight's Request for Judicial Notice ("Insight's Req."), Ex. B at 6.) This paragraph provides, "No director of the Corporation shall be personally liable to the Corporation or its stockholders for monetary damages for any breach of fiduciary duty by such a director as a director." (*Id.*) The Certificate of Incorporation states that, notwithstanding the exculpatory provision, directors are still liable for some things, including (1) breaches of duty of loyalty to Insight or its stockholders, (2) acts not made in good faith or involving either intentional misconduct or knowing violations of the law, and (3) transactions for which any director received "an improper personal benefit." (*Id.*)[2]

The SAC alleges that Insight "engaged in a prolonged stock option backdating scheme from January 24, 1995 to December 31, 2005." (SAC ¶ 65.) Plaintiff states that Insight "admitted" that this scheme existed in its 2006 Form 10-K, filed with the Securities and Exchange Commission ("SEC") on July 26, 2007 ("the Form 10-K"). (*Id.* ¶¶ 65, 68.) The Form 10-K disclosed that Insight had formed an Options Subcommittee to review certain stock option grants, after the filing of another shareholder derivative suit in Maricopa County Superior Court. (Def.'s Mot. at 3.) The Form 10-K also reported the results of the Options Subcommittee's investigations. (*Id.*; *see also, e.g.*, SAC ¶ 69.) The Options Subcommittee reviewed more than 28,000 option grants, which involved options on more than 28 million shares on 957 grant dates from 1995 to November 2005. (SAC ¶ 101.)

Plaintiff filed his first Complaint in this matter on June 15, 2009. (*See* Doc. 1.) Plaintiff amended his Complaint on August 5, 2009. (*See* Doc. 28.) In the January 2010 Order, this Court dismissed Plaintiff's Amended Complaint without prejudice for failure to adequately plead demand futility. (Jan. 2010 Order at 19-20.) Plaintiff filed the SAC on February 8, 2010. (*See* Doc. 64.) The SAC contains claims related to the alleged stock option

---

[2] The Court takes judicial notice of Insight's Certificate of Incorporation, as explained *infra*.

1  backdating scheme.[3] (SAC ¶ 1.) Plaintiff claims that the Individual Defendants (1) received
2  backdated stock option grants, (2) authorized backdated stock option grants, (3) concealed
3  the existence of the alleged backdating scheme by causing Insight to make false public
4  filings, and (4) caused Insight to forgo recovery from individuals who received excessive
5  compensation in the form of backdated stock option grants. (*Id.*) Insight now moves to
6  dismiss the SAC with prejudice, arguing that Plaintiff failed to make a pre-litigation demand
7  on the board and has not properly established demand futility. (Def.'s Mot. at 1-2.)

**II.    LEGAL STANDARDS AND ANALYSIS**

   **A.    Judicial Notice**

10  The Court first addresses Insight's Request for Judicial Notice (Doc. 76). Insight
11  requests that the Court take notice of three documents: (1) "relevant excerpts" of Insight's
12  Form 10-K filed on July 26, 2007; (2) Insight's Amended and Restated Certificate of
13  Incorporation; and (3) a portion of the transcript from the hearing regarding Defendants'
14  prior Motions to Dismiss in this action. (*Id.* at 2-3.)

15  Generally, on a motion to dismiss, a court limits its review to the contents of the
16  complaint and may only consider material that is properly presented to the court as part of
17  the complaint. *See Lee v. City of L.A.*, 250 F.3d 668, 688-89 (9th Cir. 2001) (citation
18  omitted). However, a court may take judicial notice of "matters of public record" without
19  converting a motion to dismiss into a motion for summary judgment. *Id.* (citing Fed. R. Evid.
20  201; *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)). Thus, "[j]udicial
21  notice is appropriate for SEC filings, press releases, and accounting rules as they are 'capable
22  of accurate and ready determination by resort to sources whose accuracy cannot be
23  reasonably questioned.'" *In re Network Assoc., Inc. II Sec. Litig.*, No. C 00-CV-4849, 2003
24  WL 24051280, at *1 n.3 (N.D. Cal. Mar. 25, 2003) (citing Fed. R. Evid. 201(b); *Plevy v.
25  Haggerty*, 38 F. Supp. 2d 816, 821 (C.D. Cal. 1998); *Urbanek v. United States*, 731 F.2d 870,

---

[3] Plaintiff's Amended Complaint, which was dismissed in the January 2010 Order, had a different focus. (*See* Jan. 2010 Order at 2-3.)

- 4 -

873 n.3 (Fed. Cir. 1984)). Similarly, courts may take judicial notice of court filings, as they are matters of public record, and "[i]t is also well established that a federal district court can take judicial notice of its own records." *Kruska v. Perverted Justice Found. Inc.*, No. CV 08-00054-PHX-SMM, 2010 WL 1875514, at *2 (D. Ariz. May 7, 2010) (citations omitted). A court may take judicial notice of a certificate of incorporation of a Delaware corporation because "it is a publicly filed document." *McMichael v. U.S. Filter Corp.*, Nos. EDCV 99-182VAP (MCX), DECV 00-340VAP (MCX), EDCV 00-341VAP (MCX), EDCV 00-528VAP (MCX), EDCV 00-196VAP (MCX), EDCV00-223VAP (MCX), 2001 WL 418981, at *8 (C.D. Cal. Feb. 23, 2001) (citations omitted). Courts may also consider documents that are referenced in the complaint, if the authenticity of those documents is not at issue and the complaint relies on those documents. *Lee*, 250 F.3d at 688-89 (citations omitted). However, "a court may not take judicial notice of a fact that is 'subject to reasonable dispute.'" *Id.* (quoting Fed. R. Evid. 201(b)).

The three documents submitted by Insight all satisfy Rule 201, as they are all matters of public record. The Form 10-K is publicly filed, as is Insight's Certificate of Incorporation, and it is proper for the Court to consider a portion of its own record. Also, the Form 10-K is referenced in the SAC and forms the basis of Plaintiff's claims. Accordingly, the Court takes judicial notice of the attachments to Insight's Request for Judicial Notice.

**B.    Motion to Dismiss Pursuant to Rule 12(b)(6)**

The Federal Rules of Civil Procedure require "only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also* Fed. R. Civ. P. 8(a)(2). Thus, dismissal for insufficiency of a complaint is proper if the complaint fails to state a claim on its face. *Lucas v. Bechtel Corp.*, 633 F.2d 757, 759 (9th Cir. 1980). "While a complaint attacked by a Rule 12(b)(6) motion does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief'

- 5 -

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citations omitted).

A Rule 12(b)(6) dismissal for failure to state a claim can be based on either (1) the lack of a cognizable legal theory or (2) insufficient facts to support a cognizable legal claim. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). In determining whether an asserted claim can be sustained, all allegations of material fact are taken as true and construed in the light most favorable to the non-moving party. *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754 (9th Cir. 1994). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that 'recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). However, "for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1952 (2009)). In other words, the complaint must contain enough factual content "to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Twombly*, 550 U.S. at 556.

### C. Contemporaneous Stock Ownership

In the January 2010 Order, the Court directed Plaintiff to clarify his contemporary stock ownership in any amended Complaint. (Jan. 2010 Order at 7.) Insight asserts that this element of Plaintiff's derivative claim is still unclear. (Insight's Mot. at 7.) The contemporaneous stock ownership rule requires that a plaintiff in a shareholder derivative action allege that he owned stock at the time the claims arose. *See, e.g.*, *Bangor Punta Operations, Inc. v. Bangor & A. R. Co.*, 417 U.S. 703, 708-09 & nn.3-4. (1974). Pursuant to the Federal Rules of Civil Procedure, a complaint in a shareholder derivative action must be verified and must "allege that the plaintiff was a shareholder or member at the time of the transaction complained of, or that the plaintiff's share or membership later devolved on it by operation of law." Fed. R. Civ. P. 23.1(b)(1).

1  The SAC states that Plaintiff "is the beneficial owner of 200 shares of . . . Insight. Plaintiff first purchased shares of Insight on July 19, 2002." (SAC ¶ 10.) The SAC does not specifically describe the circumstances of Plaintiff's "beneficial" ownership, but even assuming that he is the true owner of the shares, this allegation makes clear that he lacks standing to challenge any actions or inactions of Insight or its board of directors before July 19, 2002. The Court will only consider this narrowed period in which the alleged backdating occurred: July 19, 2002, to late 2005. (*Id.* ¶¶ 60, 65-77.)[4]

**D.     Demand Futility**

In a stockholder derivative suit, "a stockholder asserts a cause of action belonging to the corporation." *Rales v. Blasband*, 634 A.2d 927, 932 (Del. 1993) (citing *Aronson v. Lewis*, 473 A.2d 805, 811 (Del. 1984); *Levine v. Smith*, 591 A.2d 194, 200 (Del. 1991)). Federal Rule of Civil Procedure 23.1 imposes "a pleading requirement with regard to demand; the substantive demand requirement is an issue of state law." *Potter v. Hughes*, 546 F.3d 1051, 1054 n.1 (9th Cir. 2008) (citing *Kayes v. Pac. Lumber Co.*, 51 F.3d 1449, 1463 n.10 (9th Cir. 1995)). Rule 23.1 applies when a shareholder of a corporation brings a derivative action to enforce a right that the corporation may properly assert but has failed to enforce. Fed. R. Civ. P. 23.1(a). A complaint in a shareholder derivative action must "state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors or comparable authority and, if necessary, from the shareholders or members; and (B) the reasons for not obtaining the action or not making the effort." Fed. R. Civ. P. 23.1(b)(3). "Pursuant to Rule 23.1, a putative derivative plaintiff can initiate a derivative action only if he or she makes an adequate demand on the Board under applicable state law." *Potter*, 546 F.3d at 1055.

The Court "must apply the demand futility exception as it is defined by the law of the [s]tate of incorporation." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 108-09 (1991). The parties agree that Delaware law applies in this case. Under Delaware law, "[t]o show futility

---

[4] The SAC states in some places that the Backdating Period ended in November 2005 and in others that it continued through December 31, 2005. (*See* SAC ¶¶ 60, 65, 68.)

- 7 -

1  . . . a plaintiff must allege particularized facts creating a reasonable doubt that (1) the
2  directors are disinterested and independent, or (2) the challenged transaction was otherwise
3  the product of a valid exercise of business judgment." *In re Silicon Graphics, Inc. Sec. Litig.*,
4  183 F.3d 970, 990 (9th Cir. 1999) (citing *Aronson*, 473 A.2d at 814); *see also Potter*, 546
5  F.3d at 1058 (same). "At the pleading stage, Board independence and compliance with the
6  business judgment rule are presumed." *In re Silicon Graphics*, 183 F.3d at 990. Demand is
7  excused only where the allegations in the complaint "show the defendants' actions 'were so
8  egregious that a substantial likelihood of director liability exists. The mere threat of personal
9  liability for approving a questioned transaction, standing alone, is insufficient to challenge
10 either the independence or disinterestedness of directors.'" *Id.* (quoting *Aronson*, 473 A.2d
11 at 815).

12 Where, as here, a company has limited director liability, the plaintiff must allege
13 particularized facts that support a substantial threat of liability for a non-exculpated claim.
14 *Wood v. Baum*, 953 A.2d 136, 141 (Del. 2008) (citations omitted). "The requirement of
15 particularized facts means that a '[p]laintiff's pleading burden [in the demand excused
16 context] is . . . more onerous than that required to withstand a Rule 12(b)(6) motion.'" *Weiss*
17 *v. Swanson*, 948 A.2d 433, 441 (Del. Ch. 2008) (quoting *Levine*, 591 A.2d at 207). While all
18 reasonable inferences from the complaint's allegations are drawn in favor of the plaintiff,
19 "'only well-pleaded allegations of fact must be accepted as true; conclusory allegations of
20 fact or law not supported by allegations of specific facts may not be taken as true.'" *Id.*
21 (quoting *Grobow v. Perot*, 539 A.2d 180, 187 (Del. 1988)).

22 In the SAC, Plaintiff states that demand on the Insight board would have been futile.
23 (SAC ¶ 112.) Plaintiff alleges, "[D]emand is excused because there is a reasonable doubt that
24 at least five members of Insight's Board are disinterested or independent regarding Plaintiff's
25 claims and because the Individual Defendants' decision not to pursue Insight's rights is not
26 protected by the business judgment rule." (*Id.* ¶ 114 (footnote omitted).) Plaintiff asserts that
27 five of the ten members of Insight's board (at the time the original Complaint was filed,
28 February 8, 2010) "either received improperly backdated stock option grants or knowingly

- 8 -

granted backdated stock options." (*Id.* ¶ 115.) The SAC states that, by virtue of their membership in Insight's Compensation Committee, Defendants Gunning, Jones, Fisher, and Dorrance knowingly approved improperly backdated stock option grants. (*Id.*)

The SAC also states that, as CEO of Insight, Defendant Tim Crown granted backdated stock options to Insight employees. (*Id.*) Further, according to the SAC, "demand is excused as to Tim Crown because, as one of Insight's highest officers throughout the Backdating Period, it is overwhelmingly likely that he received backdated stock options." (*Id.* ¶ 116.) Plaintiff also alleges that demand is excused as to Tim Crown because Plaintiff has claims against Tim Crown's brother Eric. (*Id.*) The SAC alleges that Demand should be excused against Defendants Gunning because "there is at least a forty percent chance that [they] received backdated stock options,"[5,6] because he faces a substantial likelihood of liability for his actions, and because of his association with the Valley of the Sun and the Arizona Sports Foundations, both of which receive funding from Insight. (*Id.* ¶ 120.) Plaintiff also contends without further specification that certain Individual Defendants who are or were board members are "dominated" by or "beholden" to Tim Crown or his brother Eric. (*Id.* ¶¶ 120-24, 126-27.)

The SAC alleges that demand should be excused against Defendants Tim Crown, Dorrance, Gunning, Pushor, Jones, Fisher, and Robino, members of the Insight board at the time of the July 26, 2007, report of the Options Subcommittee because they decided not to

---

[5] The SAC does not specifically explain how Plaintiff reached this percentage. Plaintiff alleges that "Insight has admitted that there is a 100 percent chance that at least two outside directors, *i.e.* Gunning, Jones, Fisher, Dorrance and Pushor during the relevant period, received backdated stock options." (*Id.* ¶¶ 120, 125.) The SAC does not, however, describe how or in what form Insight made this admission or Plaintiff's basis for this assertion, nor does it clarify how this fact, even if assumed to be sufficiently specific for purposes of demand futility analysis, leads to a forty percent chance that each of the above-listed Individual Defendants received backdated stock options. (*See id.* ¶¶ 120-24.)

[6] Plaintiff also makes the allegation regarding percentage chance of receipt of backdated stock option grants with respect to Defendants Jones, Fisher, Dorrance, and Pushor. (*Id.* ¶¶ 120-24.)

- 9 -

seek recovery from the Individual Defendants who received backdated stock option grants. (*Id.* ¶ 117.) Plaintiff contends that demand should be excused against all *current* members of the Insight board[7] because "their decision not to exercise the Company's rights against the Individual Defendants is so unreasonable . . . that it is not protected by the business judgment rule and constitutes a breach of fiduciary duty of loyalty." (*Id.* ¶ 118.)

Demand futility analysis proceeds on a claim-by-claim basis. *Beam v. Stewart*, 833 A.2d 961, 977 n.48 (Del. Ch. 2003) (citations omitted); *see also Khanna v. McMinn*, No. Civ.A. 20545-NC, 2006 WL 1388744, at *14 (Del. Ch. May 9, 2006) ("This analysis is fact-intensive and proceeds director-by-director and transaction-by-transaction."). Plaintiff's SAC alleges that the Individual Defendants

> perpetrated a concerted stock option backdating scheme . . . that involved: (1) receiving backdated stock options, (2) authorizing the granting of backdated stock options, (3) causing Insight to falsely report in its public filings that the Company set the exercise prices of all stock options granted at the fair market value of the stock on the date of grant, and (4) causing Insight to forgo any recovery from individuals who perpetrated or benefited [*sic*] from the Backdating Scheme.

(SAC ¶ 1.) Plaintiff argues that his claims arise out of deliberate action or inaction of the Insight board, so the Court applies the test outlined in *Aronson*, 473 A.2d at 814.

Plaintiff must adequately allege demand futility with regard to at least five of the members of the Insight board at the time the SAC was filed. *See Braddock v. Zimmerman*, 906 A.2d 776, 786 (Del. 2006) ("[W]here a complaint is amended with permission following a dismissal without prejudice, . . . the Rule 23.1 demand inquiry must be assessed by reference to the board in place at the time when the amended complaint is filed."); *In re Infousa, Inc.*, No. 1956-CC, 2007 WL 3325921, at *17 (Del. Ch. 2007) (explaining that for a board with an even number of directors, a derivative plaintiff must establish demand futility as to half of them) (citation omitted). The Court notes at the outset that four of the current Insight directors (Robino, Lamneck, Ibargüen, and Woods) joined the Insight board after the

---

[7] Current Insight board members include: Defendants Tim Crown, Gunning, Jones, Fisher, Dorrance, Lamneck, Ibargüen, Pushor, Robino, and Woods. (*Id.* ¶ 118.)

- 10 -

end of the Backdating Period. (SAC ¶¶ 18-21.) Therefore, with regard to receipt, authorization, or concealment of the allegedly backdated stock option grants, Plaintiff cannot demonstrate that these four directors were interested, as they were not on the board during the period in question.

### 1. Receipt of Backdated Stock Option Grants

The first claim in the SAC relates to receipt by certain of the Individual Defendants of backdated stock option grants. (*See, e.g.*, *id.* ¶ 1.) Plaintiff asserts that demand would be futile as to Defendants Tim Crown, Gunning, Jones, Fisher, Dorrance, and Pushor because they might have received backdated stock options. (*Id.* ¶¶ 116, 121-24.) The SAC states, "While Plaintiff cannot say with certainty which of these five directors is disabled from considering this claim due to his/her receipt of tainted options there is a 100% chance that at least two of them and possibly more are the recipients . . . ." (*Id.* ¶ 125.) Plaintiff alleges that it is "overwhelmingly likely" that Tim Crown received backdated stock options and that there is a 40 percent chance that each Gunning, Jones, Fisher, Dorrance, and Pushor received backdated stock options. (*Id.* ¶¶ 116, 120-24.) This allegation is not particularized, as it must be to satisfy the test for demand futility. *See In re Silicon Graphics*, 183 F.3d at 990 (citing *Aronson*, 473 A.2d at 814). Further, the chart in the SAC that purports to summarize the shares underlying option grants for the period in question (2002-05) does not list any grants to any Director Defendants other than Tim Crown. (*See* SAC ¶ 67 (recording grants to E. Crown, T. Crown, Laybourne and Fennessy).)

In addition, to render demand futile on the Director Defendants for this claim, they would have had to knowingly receive the backdated options, and the SAC contains no particularized allegations regarding their mental states. Simply stating that the receipt of backdated options was "knowing" does not satisfy the particularity requirement for demand futility. *See, e.g.*, *DiLorenzo v. Norton*, No. 07-144 (RJL), 2009 WL 2381327, at *6 (D.D.C. July 31, 2009) ("Even assuming . . . that plaintiff's quantitative analysis sufficiently supports an inference that the 2004 options were backdated . . . , plaintiff fails to allege with particularity facts that would establish that any of the directors had the requisite culpable

knowledge."). The Court finds that, with regard to Plaintiff's claim that Defendants knowingly received backdated stock option grants, Plaintiff has not adequately alleged particularized facts in support of the proposition that demand on Insight's board would have been futile.

### 2. Authorization of Backdated Stock Option Grants

Plaintiff's next claim relates to authorization of the allegedly backdated stock options by the Insight board. (*See* SAC ¶ 69.) Plaintiff states that Defendants Gunning, Jones, Fisher, and Dorrance "approved backdated stock options." (*Id.* ¶ 115.) The Form 10-K states, "During the Relevant Period, the Company followed a practice of requiring Compensation Committee approval of the stock option awards to the three highest ranking executives of the Company." (Insight's Req., Ex. A at 3.) Plaintiff argues that this supports an inference that the approval of backdated stock options during the relevant period was knowing. (Pl.'s Opp'n at 7-10.) This assertion, both in the SAC and in Plaintiff's briefing, rests on a misreading of the Form 10-K. Insight did not admit "that some of the backdating was due to the intentional use of hindsight to select favorable low prices for discretionary grants." (Pl.'s Opp'n at 8.) Rather, the Form 10-K states:

> The Company determined that certain grants to [the top three executives] require alternative measurement dates. For example, due to inconclusive evidence regarding the date of Compensation Committee approval, because the Board had approved the Proxy Statement in which the award was specifically listed, the Proxy Statement filing date was selected as the best evidence of a measurement date for the award.

(Insight's Req., Ex A at 3.) The Form 10-K, of which the Court has taken judicial notice, does not support the inference suggested by Plaintiff.

The mere fact that Defendants Gunning, Jones, Fisher, and Dorrance served on the Compensation Committee does not satisfy the requirements of demand futility. *See In re CNET Networks, Inc. Derivative Litig.*, 483 F. Supp. 2d 947, 965 (N.D. Cal. 2007) (concluding that simply alleging that directors were members of a committee or "approved the underlying transaction" did not excuse failure to make a demand (citing *Brehm v. Eisner*, 746 A.2d 244, 257 n.34 (Del. 2000)). Even inferring that the members of the Compensation

1  Committee approved stock option grants during the period in question, this allegation is not
2  specific enough to satisfy the demand futility requirement. *See DiLorenzo*, 2009 WL
3  2381327, at *6 ("While these allegations compel an inference that the Compensation
4  Committee members approved the 2004 stock options grants as a general matter, they fail to
5  allege with particularity any facts concerning how, when, or by whom the options were
6  actually issued, or that the committee members otherwise had culpable knowledge."). In such
7  a situation, a plaintiff must "allege with particularity 'whether and to what extent any director
8  was involved in the mechanics by which the options were issued.'" *Id.* (quoting *Desimone
9  v. Barrows*, 924 A.2d 908, 942 (Del. Ch. 2007)).

10  Also, even if the Court were to conclude that Defendants Gunning, Jones, Fisher, and
11  Dorrance were interested, for purposes of demand futility analysis as regards this claim, six
12  other board members remained as of the date of the filing of the SAC, and Plaintiff has made
13  no allegations that those Defendants would have been unable to impartially consider a proper
14  demand on the board with respect to this claim.

### 3. Concealment of the Backdating Scheme

16  Plaintiff's third claim relates to alleged concealment of the backdating scheme by
17  making public filings that did not acknowledge the impropriety. (SAC ¶¶ 78-87.) Plaintiff
18  grounds this claim in Insight's public filings prior to review of the stock option grants by the
19  Options Subcommittee. (*Id.* ¶¶ 78-87, 117.) This allegation is not sufficient to satisfy the
20  particularity requirement for demand futility. *See In re MIPS Techs., Inc. Deriv. Litig.*, No.
21  C-06-06699 RMW, 2008 WL 3823726, at *6 (N.D. Cal. Aug. 13, 2008) ("A director's
22  execution of financial reports, without more, is insufficient to create an inference that he had
23  actual or constructive notice of any illegality." (citing *Wood*, 953 A.2d at 142)). Plaintiff's
24  argument that demand would have been futile on the Insight Board because the Director
25  Defendants would have been liable for execution of financial statements and other public
26  filings is unavailing. *In re Silicon Graphics*, 183 F.3d at 990 ("'The mere threat of personal
27  liability for approving a questioned transaction, standing alone, is insufficient to challenge
28  either the independence or disinterestedness of directors.'" (quoting *Aronson*, 473 A.2d at

1 815)). Plaintiff has not satisfied the stringent particularity requirement with respect to this
2 claim.

### 4. Failure to Seek Recovery

Plaintiff's fourth claim relates to failure to recover the allegedly excessive compensation generated by the improperly backdated stock options. (*See, e.g.*, SAC ¶¶ 1, 106.) Plaintiff argues that the Insight board's decision not to seek recovery against the individuals who received the alleged backdated stock options was not a valid exercise of business judgment. (Pl.'s Opp'n at 15); *see also In re Silicon Graphics*, 183 F.3d at 990 (citing *Aronson*, 473 A.2d at 814). Plaintiff asserts that the Insight board made an improper, conscious decision not to recover funds from the individuals who were overcompensated. (Pl.'s Opp'n at 15.) As the Court has already found, Plaintiff has not adequately alleged particularized facts to show that a majority of the Insight board was "interested." Further, to satisfy the second prong of the *Aronson* test, "a plaintiff must plead sufficient particularized facts to raise (1) a reason to doubt that the action was taken honestly and in good faith or (2) a reason to doubt that the board was adequately informed in making the decision." *In re Intel Corp. Deriv. Litig.*, 621 F. Supp. 2d 165, 170 (D. Del. 2009).

The SAC contains no particularized allegations to substantiate Plaintiff's claim that this decision was not a valid exercise of business judgment. Thus, Plaintiff has not raised a reasonable doubt as to the valid exercise of business judgment in this instance. Plaintiff posits that the Insight board caused the company to forgo millions of dollars that could have been recovered from the individuals in question, and this decision constitutes corporate waste. (Pl.'s Opp'n at 16-17.) However, a plaintiff cannot demonstrate demand futility by merely arguing that the board did not instigate the litigation he wishes they would. *See Cramer v. Gen. Tel. & Elecs. Corp.*, 582 F.2d 259, 274 (3d Cir. 1978); *Allison v. Gen. Motors Corp.*, 604 F. Supp. 1106, 1113 (D. Del. 1985) ("[T]he GM Board's knowledge of wrongs and failure to institute suit, without more, is inadequate to excuse demand. . . . A general allegation that the Board acquiesced, as signified by its failure to file remedial litigation, is not sufficiently particular to demonstrate demand futility." (internal citations omitted)). There

- 14 -

1 are numerous business reasons why a corporation might choose not to take legal action in
2 such a situation, including, for instance, the fact that the cost of litigation could greatly
3 exceed any recovery. Additionally, Plaintiff has not pled facts that support an inference that
4 the Director Defendants acted knowingly in this context any more than with respect to the
5 other claims. *See Wood*, 953 A.2d at 141.

### 5. Director Independence

Plaintiff also has not alleged particularized facts to show that demand on the Insight board would have been futile because of lack of director independence. *See In re Dow Chem. Co. Deriv. Litig.*, No. , 2010 WL 66769, at *7 (Del. Ch. Jan. 11, 2010) ("Independence means that a director's decision is based on the corporate merits of the subject before the board rather than extraneous considerations or influences." (internal quotation and citation omitted)). Plaintiff has generally alleged that various directors are dominated or controlled by Tim and/or Eric Crown, but this type of allegation is neither specific nor detailed enough to satisfy the demand futility standard. (*See* SAC ¶¶ 120-24, 126-27.) As these vague allegations do not show that a majority of the board lacks independence, Plaintiff cannot survive Insight's Motion on this theory.

### III. CONCLUSION

The SAC represents Plaintiff's third bite at the apple, and Plaintiff still has not adequately alleged demand futility. Therefore, the Court grants Insight's Motion and dismisses the SAC with prejudice. As a result, the Court will not address the Individual Defendants' Motion to Dismiss at this juncture, and it is denied as moot.

**IT IS ORDERED** granting Nominal Defendant Insight Enterprises's Motion to Dismiss Second Amended Verified Shareholder Derivative Complaint (Doc. 75) and dismissing the Second Amended Verified Shareholder Derivative Complaint with prejudice.

**IT IS FURTHER ORDERED** denying as moot Defendants Timothy A. Crown, Heidi Crown, Larry A. Gunning, Penelope Gunning, Robertson C. Jones, Katherine Jones, Michael M. Fisher, Joan Fisher, Bennett Dorrance, Jacquie Dorrance, Kathleen S. Pushor, John Pushor, David Robino, Lisa Robino, Anthony Ibargüen, Susan Ibargüen, Robert

1  Woods, Ken Lamneck, Eric J. Crown, Richard A. Fennessy, Lee Ann Fennessy, Stanley
2  Laybourne, and Ellen Laybourne's Motion to Dismiss Second Amended Verified
3  Shareholder Derivative Complaint (Doc. 77).
4          DATED this 9th day of July, 2010.

_____
Susan R. Bolton
United States District Judge